[No. B004572. Second Dist., Div. Three. Mar. 13, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
MARY ELIZABETH TRANTOW, Defendant and Appellant.

**COUNSEL**

Traun, Waller & McKee, Traun & McKee and Julie A. Traun for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert R. Anderson and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MAYEDA, J.**\*—Mary Elizabeth Trantow appeals from the trial court's denial of a writ of error *coram nobis* brought to set aside felony convictions for selling amphetamines and marijuana. For the reasons specified below, we deny the appellant's request and affirm the denial of the writ of error *coram nobis*.

### PROCEDURAL AND FACTUAL BACKGROUND

In an information filed by the District Attorney of the County of Los Angeles in 1970, appellant Mary Elizabeth Trantow was charged with six felony drug related violations. Counts I and III alleged the sale of marijuana in violation of Health and Safety Code section 11531. Counts II and IV alleged sales of a dangerous drug, amphetamine sulphate, in violation of the Health and Safety Code section 11912. Count V alleged possession of marijuana for sale in violation of Health and Safety Code section 11530.5. Count VI alleged possession for sale of a dangerous drug, amphetamine sulphate, in violation of Health and Safety Code section 11911.

Trantow entered pleas of not guilty to all six counts. She subsequently withdrew her not guilty pleas as to counts I and II, alleging sales of marijuana and amphetamines respectively, and entered pleas of guilty to both counts on October 7, 1970. At the time she entered her pleas of guilty to counts I and II, Trantow was not advised by her attorney, the court or the district attorney that convictions for those offenses could result in deportation from the United States.[1] When she pleaded guilty, Trantow was a legal resident alien in this country. Counts III, IV, V and VI were dismissed by the People in the furtherance of justice at sentencing. Trantow was granted probation for a period of three years upon condition that the first four weekends be spent in county jail.

In October 1973, probation was terminated pursuant to Penal Code section 1203.3. Trantow's pleas of guilty were set aside, pleas of not guilty were entered and counts I and II were dismissed pursuant to section 1203.4 of the Penal Code.

In 1976, Trantow filed a petition for a writ of habeas corpus, raising the issue of her possible deportation. On September 2, 1976, her writ of habeas corpus was argued and denied.

---

*Assigned by the Chairperson of the Judicial Council.

[1]Penal Code section 1016.5 now requiring such advisement applies to pleas of guilty or nolo contendere taken after January 1, 1978.

On February 17, 1984, Trantow's hearing on her petition for writ of error *coram nobis* was heard. On March 8, 1984, the court denied the petition for writ of error *coram nobis.*

This appeal was timely filed.

## CONTENTIONS ON APPEAL

Appellant Trantow contends that the trial court abused its discretion and erroneously denied her writ of error *coram nobis.*

## DISCUSSION

■ The requirements which must be met before granting a writ of *coram nobis* are set forth in *People* v. *Shipman* (1965) 62 Cal.2d 226 [42 Cal.Rptr. 1, 397 P.2d 993]: "The writ of *coram nobis* is granted only when three requirements are met. (1) Petitioner must 'show that some fact existed which, without any fault or negligence on his part, was not presented to the court at the trial on the merits, and which if presented would have prevented the rendition of the judgment.' [Citations omitted.] (2) Petitioner must also show that the 'newly discovered evidence . . . [does not go] to the merits of issues tried; issues of fact, once adjudicated, even though incorrectly, cannot be reopened except on motion for new trial.' [Citations omitted.] . . . (3) Petitioner 'must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ.' [Citations omitted.]" (*People* v. *Shipman, supra,* at p. 230.)

■ The first requirement under *Shipman,* has two elements. The first is that there be an error of fact at the time of judgment. The second is that such error of fact would have prevented the rendition of the judgment. Trantow asserts that her alien status is the error of fact that was not presented to the court. Trantow argues that had the trial court known of her alien status and the possibility of deportation, it would not have rendered the judgment which it did.

Assuming that the mistake of "fact" was that Trantow did not know her alien status might result in deportation, it does not necessarily follow that this would have "prevented" the judgment. Trantow's alien status is a fact irrelevant to her conviction on the two felony charges.

Respondent cites examples of cases where the error of fact claimed would have been a legal impediment to the rendition of the judgment. For example,

the "fact" that the defendant was insane at the time of a guilty plea would make the plea invalid and therefore, if the fact were known, it would have prevented the rendition of judgment. (*People* v. *Welch* (1964) 61 Cal.2d 786 [40 Cal.Rptr. 238, 394 P.2d 926].) Likewise, if the plea of guilty was the product of coercion or fraud the judgment would be subject to a legal bar. (*People* v. *Wadkins* (1965) 63 Cal.2d 110 [45 Cal.Rptr. 173, 403 P.2d 429]; *People* v. *Cortez* (1970) 13 Cal.App.3d 317 [91 Cal.Rptr. 660].) Insane people may not be allowed to unintelligently plead guilty and others may not be coerced into involuntary pleas of guilt.

Appellant Trantow has mistakenly confused facts which would "prevent" the rendition of judgment with facts which might engender sympathy. In support of her position, Trantow relies upon *People* v. *Wiedersperg* (1975) 44 Cal.App.3d 550 [118 Cal.Rptr. 755]. However, *Wiedersperg* did not require granting of the writ of error *coram nobis* as is argued by Trantow. In addition, while the *Wiedersperg* case involved a drug charge, the number and severity of the charges in this case differ substantially.

In *Wiedersperg, supra,* 44 Cal.App.3d 550, the court ruled that upon the finding of the three requirements specified in *Shipman, supra,* 62 Cal.2d 226, the court *may* grant a writ of error *coram nobis.* The *Wiedersperg* court concluded that the trial court had jurisdiction to hear the petition and could, in its discretion and if the proof were sufficient, grant the relief sought. Further, Mr. Wiedersperg was convicted of a single count of possession of marijuana, a substantially less serious crime than the charges against Trantow. Trantow pleaded guilty to charges of selling marijuana and amphetamines. The plea bargain included the dismissal of four other sales and possession for sale counts. All six counts were straight felony charges and not alternate felonies or misdemeanors. Trantow must show that the mistake of fact would have prevented the rendition of judgment. To suggest that the sentencing court in this case would have dropped six felony sales and possession for sale counts and accepted a reduced charge simply because under different circumstances the court in *Wiedersperg* indicated that a trial court *might* have done so, is speculation. Appellant has failed to meet the first requirement.

As to the second requirement, there is no dispute. Trantow's alien status was not previously adjudicated and did not go to the merits of the judgment. Therefore, the second requirement is satisfied.

The third requirement also has two parts. First, the facts upon which Trantow relies must not have been known to her and second, could not, in the exercise of due diligence, have been discovered by her at any time substantially earlier than the time of her motion for the writ. Trantow asserts

that the mistake of fact is the consequence of deportation. Trantow has established that the fact (consequence of deportation) was unknown to her at the time of plea and sentence. The issue therefore is whether, with the exercise of due diligence, Trantow could have discovered the consequence of deportation at any time substantially earlier than the bringing of this motion for the writ.

Trantow claims that the delay of some 14 years between conviction and motion for the writ is excusable. We disagree. The only delay which might be permissible is the delay between judgment and the acquisition of the previously unknown information. Even assuming that such information was not known by her at the time of the judgment, it was clearly known by Trantow when she filed a petition for a writ of habeas corpus in 1976, raising the issue of her possible deportation. She still waited an additional eight years before seeking a writ of error *coram nobis*. She argues that the delay between time of conviction in 1970 and filing of the petition for a writ of habeas corpus in 1976 is to be excused because she did not know the deportation consequences of her conviction. She argues that the eight years between 1976 and the eventual filing of her petition for a writ of error *coram nobis* is to be excused because of her lack of knowledge as to the proper legal means of seeking redress for her 1970 conviction.

We conclude that Trantow has made an insufficient showing that the facts upon which she relies could not have been discovered by her, in the exercise of due diligence, at any time substantially earlier than the time of her request for relief under *coram nobis*.

Trantow having failed to meet the first and third requirements specified in the three part *Shipman* standard, we conclude that the trial court did not abuse its discretion in denying the requested relief. Since Trantow's failure to meet the *Shipman* requirements precludes the granting of relief, we need not address Trantow's additional arguments.

The denial of the writ of error *coram nobis* is affirmed.

Lui, Acting P. J., and Danielson, J., concurred.

A petition for a rehearing was denied April 9, 1986, and appellant's petition for review by the Supreme Court was denied May 28, 1986.