[No. B164008. Second Dist., Div. Three. July 31, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
THEOPHILE CARTY, Defendant and Appellant.

## COUNSEL

Richard B. Lennon, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Mary Sanchez and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CROSKEY, J—**

## INTRODUCTION

In this case, appellant Theophile Carty filed in superior court, in propria persona, a petition for a writ of error *coram nobis* to vacate, according to his petition, a plea of no contest to failing to file an income tax return. The petition was denied and, on appeal, Carty claims the denial was error because the trial court erroneously failed to *advise* him concerning immigration consequences of his plea as required by Penal Code section 1016.5, subdivision (a),[1] he was *unaware* of the immigration consequences of his plea, and, contrary to the trial court's ruling, the petition was timely.

Having requested and received supplemental briefing, we hold that, to the extent the petition alleged that the trial court failed to advise Carty concerning the above mentioned immigration consequences, and/or that Carty was unaware of same, denial of the petition was proper. Denial was proper because a *statutory* motion to vacate judgment brought pursuant to section 1016.5, subdivision (b), and not the *nonstatutory* petition for a writ of error *coram nobis* brought by Carty, is the remedy for relief. Accordingly, we will affirm the order denying the petition. However, because Carty originally could have brought such a statutory motion and, on this record, it is appropriate for the trial court in the first instance to determine the propriety of granting such a motion, we will remand the matter with directions that the trial court treat Carty's petition as a statutory motion.

Carty appeals from the order denying his petition for a writ of error *coram nobis*, following, according to the petition, a judgment entered after his plea of no contest to failing to file an income tax return (Rev. & Tax. Code, § 19406).

## FACTUAL AND PROCEDURAL SUMMARY

On September 24, 2002, Carty, in propria persona, filed a "petition for writ of coram nobis" (capitalization omitted) in case No. BH002042.[2] The petition

---

[1] Unless otherwise indicated, references to section numbers are to the Penal Code.

[2] The petition originally specified the petition's case No. as BA099757. The petition was amended by interlineation to reflect that the petition's case number was BH002042. An attached declaration of service reflects that the petition was mailed from the Eloy Detention Center in Arizona. The petition lists Carty's name and address as "Theophile Carty [¶] 18907–112 [¶] Bravo 103 [¶] 1705 E. Hanna Rd. [¶] Eloy, AZ 85231." The record contains Carty's superior court "application to proceed *in forma pauperis* by a prisoner" (capitalization

alleged that in August 1995, a "judgement [*sic*] of conviction and sentence" was rendered by the superior court in case No. BA099757, and "[o]n April 13, 1996," as part of a plea agreement, Carty pled no contest to a charge that he violated California Revenue and Taxation Code section 19406.[3]" As a result of the conviction, Carty was "sentence[d] to 90 days of house arrest and three years probation." Carty served that sentence.

Carty alleged that as a direct consequence of the above mentioned plea, he was placed in the custody of the Federal Bureau of Prisons, was facing deportation proceedings, and was in danger of deportation, exclusion from the United States, revocation of his lawful status in the United States, and other grave immigration consequences. The underlying judgment, he claims, was unlawful because he was denied effective assistance of counsel prior to his plea in that, in pertinent part, his counsel failed to advise him concerning the immigration consequences. As a result, he asserts that his plea was neither voluntary nor intelligent, because he was ignorant of the immigration consequences of his plea. If he had been informed of those consequences, he would have used every available remedy to contest the accusations against him.

The petition further alleged that Carty's rights were violated because he was not admonished by the court concerning potential immigration consequences, and he was not warned of the possibility of deportation and exclusion from the United States. He prayed that the court, inter alia, vacate the judgment and sentence.

On October 3, 2002, the court denied the petition on the ground that *coram nobis* would not lie to vacate a judgment because of ineffective assistance of counsel or because defense counsel had given false advise, assurances, or promises. The court also denied the petition on the ground that it was untimely.

As mentioned, the petition's allegations appear to conflict concerning when Carty was convicted in the case underlying the petition (see fn. 3, *ante*). Moreover, although, the petition alleged it was verified, it was neither signed nor verified. We *assume*, for purposes of our decision, that the petition accurately alleges the crime(s) of which Carty was convicted in the underlying case, and that he is in the custody of the Federal Bureau of Prisons as a result of *that* conviction.

---

omitted) in case No. BA099757. The application includes what purports to be a signed certificate from a correctional official reflecting that, as of September 19, 2002, Carty had a minimal balance in his trust account at the Eloy Detention Center.

[3] The petition's allegations thus appear to conflict concerning whether Carty was convicted in 1995 or 1996 of a violation of California Revenue and Taxation Code, section 19406 in the case underlying the petition.

## CONTENTION

Carty contends "[t]he court erred in denying the petition without issuance of an order to show cause."

■ The writ of error *coram nobis* is a *common law* remedy. (*People v. Thomas* (1959) 52 Cal.2d 521, 527, fn. 2 [342 P.2d 889] (*Thomas*); *People v. Adamson* (1949) 33 Cal.2d 286, 287 [201 P.2d 537]; see 6 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Judgment, § 182, pp. 210–211.) The writ of error *coram nobis* generally lies to give relief where the petitioner, through fraud, coercion, or excusable mistake, was deprived of a fair trial on the merits. (See 6 Witkin & Epstein, *supra*, § 184, p. 212.)

■ A petition for a writ of error *coram nobis* (hereafter, petition) is a motion to vacate judgment. (*People v. Shipman* (1965) 62 Cal.2d 226, 229, fn. 2 [42 Cal.Rptr. 1, 397 P.2d 993] (*Shipman*); *Thomas, supra*, 52 Cal.2d at p. 527, fn. 2.) However, the petition is a *nonstatutory* motion to vacate judgment (*People v. Banks* (1959) 53 Cal.2d 370, 378 [1 Cal.Rptr. 669, 348 P.2d 102]; *People v. Adamson* (1949) 34 Cal.2d 320, 327 [210 P.2d 13]; *People v. Adamson, supra*, 33 Cal.2d at p. 287 ), since the petition seeks a common law remedy.[4]

Importantly, the "purpose [of a petition] is to secure relief, *where no other remedy exists.*" (*People v. Adamson, supra*, 34 Cal.2d at p. 326, italics and bracketed material added; *People v. Banks, supra*, 53 Cal.2d at p. 378 [accord]; *People v. Wheeler* (1970) 5 Cal.App.3d 534, 537 [85 Cal.Rptr. 242] [accord]; see 6 Witkin & Epstein, *supra*, § 186, p. 217 [stating, concerning the petition, "[a] frequent ground of denial is that the alleged error could have been raised in another way, e.g., by motion during trial, motion for new trial, appeal, or habeas corpus. [Citations.]"].)

Prior to the 1977 enactment of section 1016.5, discussed *post*, a defendant could file a petition seeking relief from a judgment on the ground that the defendant was *unaware* of the immigration consequences of a guilty plea, but

---

[4] In *Shipman*, our Supreme Court observed, "The writ of *coram nobis* is granted only when three requirements are met. (1) Petitioner must 'show that some fact existed which, without any fault or negligence on his part, was not presented to the court at the trial on the merits, and which if presented would have prevented the rendition of the judgment.' [Citations.] (2) Petitioner must also show that the 'newly discovered evidence ... [does not go] to the merits of issues tried; ...' [Citations.] ... (3) Petitioner 'must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ. ...' (*People v. Shorts*, 32 Cal.2d 502, 513 [197 P.2d 330]; accord, *People v. Welch*, 61 Cal.2d 786, 791 [40 Cal.Rptr. 238, 394 P.2d 926].)" (*Shipman, supra*, 62 Cal.2d at p. 230.)

the defendant had no right under *Boykin/Tahl*[5] principles to be *advised* by the trial court concerning such consequences.[6] Thus, prior to 1977, a defendant could not, via a petition, seek relief on the ground that the trial court failed to give such advisements.

2. *Section 1016.5, Subdivision (b)'s Statutory Motion To Vacate Judgment Supplants The Writ Where The Trial Court Fails To Advise A Defendant Concerning Specified Immigration Consequences And/Or The Defendant Is Unaware Of Same*

Section 1016.5, enacted in 1977, by Statutes 1977, chapter 1088, section 1, became effective January 1, 1978. (*People v. Trantow, supra*, 178 Cal.App.3d at p. 844, fn. 1, 224 Cal.Rptr.70.)[7] Subdivision (a) thereof requires that, prior

---

[5] *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]; *Boykin v. Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709].

[6] *People v. Flores* (1974) 38 Cal.App.3d 484 [113 Cal.Rptr. 272] (*Flores*), held that a defendant had no right under *Boykin/Tahl* principles to a trial court *advisement* on the record concerning the collateral consequence that a guilty plea might subject the defendant to deportation, and a trial court did not err by denying a prejudgment motion to withdraw a guilty plea brought on the ground that the absence of such an advisement invalidated the plea. (*Flores, supra*, 38 Cal.App.3d at pp. 486–487; see *People v. Gontiz* (1997) 58 Cal.App.4th 1309, 1313 [68 Cal.Rptr.2d 786] ["[p]rior to the passage of section 1016.5, courts were not required to inform alien defendants of possible immigration consequences of their guilty pleas," citing *Flores*.])

Later, in *People v. Superior Court* (*Giron*) (1974) 11 Cal.3d 793 [114 Cal.Rptr. 596, 523 P.2d 636] (*Giron*), our Supreme Court held that a trial court did not abuse its discretion by granting a defendant's prejudgment section 1018 motion to withdraw his negotiated guilty plea where the defendant, his counsel, and the court were *unaware* when the defendant pled guilty and accepted probation that the plea *would* subject him to deportation, and where he later received from immigration authorities an order to show cause why he should not be deported based on the conviction. (*Giron, supra*, 11 Cal.3d at pp. 795–798.) *Giron* observed, however, that "We do not deem the thrust of [Giron's] … argument to be that Giron was entitled as a matter of right to be *advised* of such collateral consequences prior to the acceptance of his plea nor do we so hold." (*Id.* at p. 797, italics added.)

The seminal case of *People v. Wiedersperg* (1975) 44 Cal.App.3d 550 [118 Cal.Rptr. 755] (*Wiedersperg*), relying on *Giron*, held that a petition for a writ of error *coram nobis* adequately alleged grounds for relief where (1) the petition alleged that the defendant submitted the issue of his guilt for the underlying offense on a preliminary hearing transcript (a "slow plea") and was convicted, (2) immigration authorities later determined he should be deported based on the conviction, and (3) the defendant, his counsel, and the court were *unaware* at the time of the submission that it could lead to deportation. (*Wiedersperg, supra*, 44 Cal.App.3d at pp. 552–555.) *Wiedersperg* concluded that "the petition stated facts upon which the court, in its discretion and if the proof is sufficient, could grant the relief sought." (*Id.* at p. 555; see *People v. Trantow* (1986) 178 Cal.App.3d 842, 845–847 [224 Cal.Rptr. 70] [citing *Wiedersperg*, but denying a petition involving a pre-1977 underlying judgment on the ground of defendant's lack of due diligence and on the ground that the alleged mistake of fact would not have prevented rendition of the judgment].)

[7] That section reads, in relevant part: "(a) Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as

to accepting a guilty or no contest plea to an offense not an infraction, a court must *advise* the defendant concerning specified immigration consequences. Subdivision (b), provides a remedy when a court fails to give the requisite advisements and the plea may have a specified immigration consequence(s): a defendant may *move to vacate* the judgment, withdraw said plea, and enter a plea of not guilty.[8]

 It is clear from section 1016.5, subdivision (d), that the advisement requirement of subdivision (a) was designed to remedy the problem arising when defendants entered pleas of guilty and/or no contest, not "knowing" (subdivision (d)), that is, unaware, that the conviction could have the specified immigration consequence(s). Accordingly, the term "advisement" in subdivision (a) reasonably must be understood to mean not merely that the

---

infractions under state law, the court shall administer the following advisement on the record to the defendant: [¶] If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. [¶] (b) ... If, after January 1, 1978, the court fails to advise the defendant as required by this section and the defendant shows that conviction of the offense to which defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty. Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement. [¶] (c) With respect to pleas accepted prior to January 1, 1978, it is not the intent of the Legislature that a court's failure to provide the advisement required by subdivision (a) of Section 1016.5 should require the vacation of judgment and withdrawal of the plea or constitute grounds for finding a prior conviction invalid. Nothing in this section, however, shall be deemed to inhibit a court, in the sound exercise of its discretion, from vacating a judgment and permitting a defendant to withdraw a plea. [¶] (d) The Legislature finds and declares that in many instances involving an individual who is not a citizen of the United States charged with an offense punishable as a crime under state law, a plea of guilty or nolo contendere is entered without the defendant knowing that a conviction of such offense is grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. Therefore, it is the intent of the Legislature in enacting this section to promote fairness to such accused individuals by requiring in such cases that acceptance of a guilty plea or plea of nolo contendere be preceded by an appropriate warning of the special consequences for such a defendant which may result from the plea."

[8] Our Supreme Court concluded in *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183 [96 Cal.Rptr.2d 463, 999 P.2d 686] (*Zamudio*) that, in order to prevail on a motion to vacate judgment brought pursuant to section 1016.5, subdivision (b), the defendant must show that " .... [1] the trial court failed, at the time of that plea, to advise him as provided by the statute ... [2] ... there exists, at the time of the motion, more than a remote possibility that his conviction will have one or more of the specified adverse immigration consequences (§ 1016.5, subd. (b)), [and] ... [3] ..., properly advised, he would not have pleaded no contest in the first place." (*Zamudio, supra,* 23 Cal.4th at p. 192, bracketed material added.)

trial court recites the specified subdivision (a) language, but that the defendant understands that recitation (and the defendant is deemed to have understood the recitation if it was given in the defendant's language). Phrased differently, once the defendant receives a subdivision (a) *advisement* from the trial court prior to the plea, the defendant can no longer claim that the defendant was *unaware* of the immigration consequences specified in that advisement. When a defendant claims that the defendant was unaware of those consequences, a statutory motion will be dispositive.

■ Finally, a motion to vacate judgment brought pursuant to section 1016.5, subdivision (b) is a *statutory* motion to vacate judgment (hereafter, statutory motion). (*People v. Totari* (2002) 28 Cal.4th 876, 879, 885, fn. 4, 886 [123 Cal.Rptr.2d 76, 50 P.3d 781] (*Totari*).) Indeed, *Totari* is the first California Supreme Court decision, and the only published decision, to refer to a motion to vacate judgment brought pursuant to section 1016.5, subdivision (b) as a "statutory motion."

### 3. *Totari And Zamudio Teach That Distinguishing The Petition From The Statutory Motion Does Not Promote Form Over Substance.*

■ Every petition for a writ of error *coram nobis* is a motion to vacate judgment, but the converse is not true. As noted earlier, our Supreme Court has made clear that a petition is the equivalent of a motion to vacate judgment, but appellate cases err by asserting that "[a] motion to vacate the judgment is the equivalent of a petition for a writ of error *coram nobis*" (*People v. Gutierrez* (2003) 106 Cal.App.4th 169, 172 [130 Cal.Rptr.2d 429]; accord, *People v. Gontiz, supra,* 58 Cal.App.4th at p. 1312; *People v. Castaneda* (1995) 37 Cal.App.4th 1612, 1618 [44 Cal.Rptr.2d 666],[9] since a *statutory* motion is not a nonstatutory petition.

#### a. *Totari.*

As shown below in *Totari*, our Supreme Court, in the context of its discussion of the appealability of an order denying a statutory motion, recently reaffirmed the distinction between the *statutory* motion and a petition as a *nonstatutory* motion to vacate judgment.

*Totari* held that an order denying a statutory motion was an appealable order under section 1237, subdivision (b), as an "order made after judgment, affecting the substantial rights of the party." (*Totari, supra,* 28 Cal.4th at

---

[9] In support of said assertion, *Gutierrez* relied on *Gontiz,* and *Gontiz* relied on *Castaneda. Castaneda* relied on *People v. Stanworth* (1974) 11 Cal.3d 588, 594, footnote 5 [114 Cal.Rptr. 250, 522 P.2d 1058], and a pre-*Stanworth* Supreme Court case, but both Supreme Court cases preceded the enactment of section 1016.5, with its statutory motion.

pp. 879, 887.) The Attorney General, who had urged the contrary, argued that the defendant in that case knew the immigration consequences of his guilty plea before he was sentenced, and also argued that the Supreme Court, in making the procedural determination of whether the above mentioned order was appealable, was required to make a de novo factual finding on the issue of whether the defendant knew said consequences. (*Totari, supra*, 28 Cal.4th at pp. 883–885.)

The Supreme Court observed that the Attorney General was "confus[ing] the contested issues on the merits with the procedural question of appealability" (*Totari, supra*, 28 Cal.4th at p. 884), and the Supreme Court rejected the Attorney General's argument. The Supreme Court noted that the Attorney General was analogizing to procedures followed in extraordinary writ proceedings. The Supreme Court also noted that, before the enactment of the *statutory* motion, the *nonstatutory* motion to vacate judgment was viewed as a petition. The Supreme Court further noted that, in an appeal from a trial court's denial of a petition, a reviewing court initially determined whether the defendant had made a prima facie showing of merit and, if the defendant had not, the court could summarily dismiss the appeal. (*Totari, supra*, 28 Cal.4th at p. 885, fn. 4.)

*Totari* observed that the appellate court in that case had found that a statutory motion was similar to, *but not the same as*, a petition; the parties did not claim otherwise; and they did not contend that the defendant's appeal was part of an extraordinary writ proceeding. *Totari* concluded that a reviewing court's de novo finding of fact to determine a right of appeal was far different from its determination of the legal sufficiency of a prima facie showing of merit. (*Totari, supra*, 28 Cal.4th at p. 885, fn. 4.)

Moreover, *Totari* later noted that the Attorney General relied on an earlier Supreme Court case involving a nonstatutory motion to vacate a judgment (although that case did not involve immigration issues). *Totari* rejected that reliance as misplaced on two grounds, the "[m]ore important" (*Totari, supra*, 28 Cal.4th at p. 886) one being that the defendant in the earlier Supreme Court case brought a nonstatutory motion to vacate judgment, while the defendant in *Totari* filed a statutory motion. (*Id.* at pp. 885–887.)

b. *Zamudio.*

Our insistence upon distinguishing between the statutory motion and a petition does not promote form over substance. Indeed, although there is no need to decide the issue, we show below that even absent our decision in this

matter, in a case such as this one in which the record is silent on the issue of due diligence, a petition, unlike a statutory motion, might be denied. [10]

The writ of *coram nobis* requires that the petitioner show "due diligence" that is, the petitioner " ... 'must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ ....' [Citations.]" (*Shipman, supra,* 62 Cal.2d at p. 230; accord, *In re Clark* (1993) 5 Cal.4th 750, 779 [21 Cal.Rptr.2d 509, 855 P.2d 729].) Thus, "it is necessary to aver not only the probative facts upon which the basic claim rests, *but also the time and circumstances under which the facts were discovered,* in order that the court can determine as a matter of law whether the litigant proceeded with due diligence[.]" (*People v. Shorts* (1948) 32 Cal.2d 502, 513 [197 P.2d 330], italics added.)

In *Zamudio,* the trial court granted the defendant's motion to vacate judgment based on the court's failure to advise, prior to his no contest plea, concerning *the immigration consequence that the defendant's conviction* could result in his exclusion from admission to the United States. (*Zamudio, supra,* 23 Cal.4th at pp. 189–190, 192.) Importantly, the motion to vacate the judgment in *Zamudio* was a *statutory* motion. (*Totari, supra,* 28 Cal.4th at p. 879.)

In *Zamudio,* the Attorney General argued that the trial court should have denied defendant's section 1016.5 motion on the ground he delayed, without excuse, in bringing it. However, there was no evidence in the record as to when the defendant first knew that he risked actual "exclusion from admission to the United States" for purposes of section 1016.5, subdivision (b). (*Zamudio, supra,* 23 Cal.4th at p. 203.) *Zamudio* rejected the notion that the issue of whether the trial court erroneously failed to advise concerning the immigration consequence was waived because of the defendant's failure to raise the issue at or before sentencing. (*Ibid.*)

*Zamudio* later acknowledged that *People v. Castaneda, supra,* 37 Cal.App.4th 1612, stood "at most" for the proposition that a postjudgment motion to change a plea must be made with reasonable diligence. (*Zamudio, supra,* 23 Cal.4th at pp. 203–204.) However, *Zamudio* concluded, "Absent evidence that defendant long ago had cause to question the accuracy of the trial court's 1992 immigration advisements, to hold he should have objected

---

[10] Moreover, leaving aside the issue of due diligence, we note that we are assuming, for purposes of the discussion below, that a trial court's failure to advise as required by section 1016.5, subdivision (a) arguably a *legal* error, is a "fact" for purposes of *Shipman's* requirement that a petition must show "some fact existed." (*Shipman, supra,* 62 Cal.2d at p. 230.)

to them *earlier* would be unfair. This conclusion accords with the plain language of section 1016.5, which contains no time bar." (*Zamudio, supra*, 23 Cal.4th at p. 204, italics added.)

█ Thus, under a *petition*, in which a defendant, such as Carty, must aver "the time and circumstances under which the facts were discovered" (*People v. Shorts, supra*, 32 Cal.2d at p. 513) as part of a due diligence showing, it appears that the defendant would have the burden to show when the defendant first had cause to question the accuracy of immigration advisements and risked actual immigration consequences, and the absence of evidence on these issues would defeat the petition. (Cf. *People v. Castaneda, supra*, 37 Cal.App.4th at pp. 1614–1619.) (We note in this regard that one of the reasons Carty's petition was denied was that it was untimely.) However, *Zamudio*, faced with a silent record on these issues, effectively concluded that a defendant has no such burden as to a *statutory* motion, and the absence of evidence on these issues does not defeat such a motion.[11]

### 4. *Application Of Law To This Case.*

#### a. *Denial Of Carty's Petition Was Proper.*

Carty contends his petition was erroneously denied.[12] As mentioned, the "purpose [of a petition] is to secure relief, *where no other remedy exists ....*" (*People v. Adamson, supra*, 34 Cal.2d at p. 326, italics added.) █ The statutory motion exists as an available postjudgment remedy when a *trial court* fails to *advise* a defendant of immigration consequences as required by section 1016.5, subdivision (a), and/or when a defendant claims he was *unaware* of those consequences. Accordingly, to the extent Carty's petition alleged such a trial court failure, and/or that he was unaware of such immigration consequences of his plea, there is no need to decide whether it was properly denied on the ground of untimeliness. We hold denial of the petition was proper since the statutory motion existed as a remedy. (Cf. *People v. Murillo* (1995) 39 Cal.App.4th 1298, 1302–1306 [46 Cal.Rptr.2d

---

[11] To the extent our decision in *People v. Dubon* (2001) 90 Cal.App.4th 944 [108 Cal.Rptr.2d 914], relied on *Zamudio* to suggest that a defendant did not have the burden to demonstrate due diligence in a petition, that language was dicta since we *held* in *Dubon* only that the defendant's petition was properly denied because he had been adequately advised of immigration consequences. Moreover, *Zamudio* involved a statutory motion while *Dubon* involved a petition, and it is settled that, with a petition, it is the defendant who bears the burden of demonstrating due diligence.

[12] Carty concedes that, to the extent the petition alleged that his trial counsel erred or alleged that Carty was denied effective assistance of counsel, the petition was properly denied. (*People v. Gallardo* (2000) 77 Cal.App.4th 971, 982–983 [92 Cal.Rptr.2d 161]; *People v. Ibanez* (1999) 76 Cal.App.4th 537, 546, fn. 13 [90 Cal.Rptr.2d 536]; *People v. Soriano* (1987) 194 Cal.App.3d 1470, 1477 [240 Cal.Rptr. 328].)

403] [statutory motion, not a motion to strike prior conviction, is the exclusive remedy to raise issue of trial court's failure to give the statutorily required advisements].) The trial court properly denied Carty's petition.[13]

### b. *Remand Is Appropriate.*

Based on our previous discussion, it is clear that Carty originally could have brought a statutory motion. Moreover, as noted earlier, a defendant making a statutory motion must show prejudice, that is, "properly advised, [the defendant] would not have pleaded no contest in the first place." (*Zamudio, supra,* 23 Cal.4th at p. 192.) Concerning that issue, *Zamudio* also observed, "Whether defendant was prejudiced by the trial court's incomplete advisements is a factual question, *appropriate for decision by the trial court in the first instance*[]" after " ' ... "an examination of the entire cause, including the evidence." ' " (*Zamudio, supra,* 23 Cal.4th at p. 210, italics added.)

Although the present record contains the petition and the order denying it, the present record contains neither the clerk's transcript nor the reporter's transcript concerning the underlying case. We have set forth in our factual and procedural summary, *ante,* all the pertinent facts we can know about this case from the petition and order. Although the petition alleges that Carty's no contest plea was negotiated, neither the petition nor the order alleges the facts concerning the underlying crime; whether Carty was originally charged with additional crimes; or the facts concerning those crimes, if any. Nor, perhaps

---

[13] None of the cases cited by Carty compels a contrary conclusion. Cases such as this division's decision in *People v. Dubon, supra,* 90 Cal.App.4th at page 947, and cases such as *People v. Gallardo, supra,* 77 Cal.App.4th at page 982, footnote 5, which suggest that a petition may lie to raise the issues of a trial court's failure to *advise* pursuant to section 1016.5, subdivision (a), and/or a defendant's *unawareness* of those immigration consequences, were decided before *Totari,* which expressly referred to the motion to vacate judgment under section 1016.5, subdivision (b) as a statutory motion, and distinguished that motion from a petition. *Dubon* and *Gallardo* did not consider whether the fact that a statutory motion exists as a remedy renders the petition unavailable as a remedy. Cases are not authority for propositions not considered. (*Zamudio, supra,* 23 Cal.4th at p. 198.)

Respondent claims Carty's petition was properly denied because it did not establish prejudice as required by *Zamudio;* that is, the petition did not establish that if properly advised, Carty would not have pled no contest. However, the trial court did not rely on that rationale to deny the petition and, in any event, *Zamudio* involved the requirements for a statutory motion, not a petition. Respondent, citing *Zamudio* and *Dubon,* concedes Carty's petition should not have been denied as untimely. We need not accept the concession, however, in light of our holding that a statutory motion, not a petition, was Carty's appropriate remedy. (See also fn. 11, *ante.*) Finally, respondent urges in his opening brief that if we do not accept his argument that Carty's petition was properly denied because it did not establish prejudice, the matter should be remanded to permit the trial court to determine whether Carty received the section 1016.5, subdivision (a), advisements. As discussed below, we believe remand is appropriate.

because Carty appeals from the order denying his petition, do the parties' briefs contain a statement of facts concerning the alleged underlying crime.

As opposed to reviewing ourselves the superior court file of the case underlying the petition to determine for the first time the pertinent facts as to the underlying crime(s), the propriety of granting a statutory motion, and in particular, the issue of whether Carty was prejudiced by any trial court failure to give him the statutorily required advisements,[14] we will, in the interests of judicial economy and fairness, remand the matter[15] with directions that the trial court treat Carty's petition as a statutory motion. We express no opinion as to what should be the disposition in the trial court of the statutory motion or the proceedings thereon.

## DISPOSITION

The order denying Carty's petition for a writ of error *coram nobis* is affirmed. The matter is remanded to the trial court with directions to treat the petition as a statutory motion to vacate judgment brought pursuant to section 1016.5, subdivision (b), and to conduct such further proceedings with respect to such motion as are appropriate.

Klein, P. J. and, Aldrich, J, concurred.

---

[14] See *Zamudio, supra*, 23 Cal.4th at pp. 209–210; *In re Resendiz* (2001) 25 Cal.4th 230, 253–255 [105 Cal.Rptr.2d 431, 19 P.3d 1171] (providing relevant criteria for the prejudice determination applicable to an ineffective assistance of counsel claim raised by habeas corpus).

[15] Section 1260 provides, in pertinent part, that "The court may … affirm … a judgment or order appealed from, … and may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances."